# THE CORRECTION OF ERRORS

### OF THE

# STATE OF NEW-YORK,

### DURING THE YEAR

# 1841.

---

TALLMAN and others, *appellants*, and WOOD and others, *respondents*.

Where a testator, who died previous to the abrogation of the rule in *Shelley's case*, devised his *real* and *personal estate* to executors *in trust* to divide the same among his children who should be living at a certain time, and among the issue of such as should have died, the latter taking the share which would have belonged to his or their parents, and to convey the same accordingly, inserting in the deed or writing to be executed to any of his children, a clause limiting the estate *to the grantee for life* with *remainder over* to the *right heirs of such grantee*: IT WAS HELD that as by the will an *executory trust* was created, and that consequently a court of chancery within the exceptions to the rule in *Shelley's case* might effectuate the manifest intent of the testator, that the *children* of the testator took only *life-estates* or *interests* in the property devised and bequeathed, and that the *remainders* went to their right heirs.

APPEAL from Chancery. Walter Wood by his last will and testament, made in August, 1826, after making several specific devises and bequests, disposed of all the residue of his estate, real and personal, to five *executors* in fee, *upon trust* to sell and dispose of the same, and

1841.

Tallman,
*v.*
Wood.

after payment of debts and legacies to invest the proceeds in stocks or in bonds and mortgages upon unincumbered real estate. At the end of *twelve months* after his decease the testator directed the income of his estate to be divided among his children then living and the issue of such as should have died, such issue taking the share of his or their parents, and thereafter *semi-annually* for the term of *six years* after his decease to make a like apportionment ; and after the expiration of the six years with all convenient speed (after retaining in their hands so much as would, according to their judgment, enable them to discharge all claims under his will and as might probably be made on his estate,) to divide any real estate undisposed of, together with all stock not reserved for other uses, into as many shares, as nearly equal as might be, as there should be of his children then alive, and as should have died leaving lawful issue then living, and by some fit and competent deed or instrument in writing convey one of said shares *to each of his children* then living, and in like manner convey one other share *to the lawful issue of any child deceased,* and directing as follows : " And in each deed or writing executed to any one of my children, shall also be inserted and expressed a clause limiting such grant or interest conveyed, to the grantee for life, with remainder over to the right heirs of such grantee their heirs and assigns forever." Then followed a further direction, that a *final division* in the way and manner prescribed in the last preceding clause should be made as soon as the executors should deem it safe and expedient to do so. The testator died in 1827, leaving his wife and ten children him surviving. His will was proved by three of his executors in 1828, and in 1833, William, one of the sons of the testator, filed a bill in chancery against the executors and his brothers and sisters, for the purpose of settling the construction of the will and to have the trusts, as far as valid, carried into effect under the direction of the court of chancery.

The cause was heard upon bill and answers by the Vice-Chancellor of the seventh circuit, who, in 1834, decreed that *the children of the testator* were entitled *only to an estate for life* in the *real estate* devised to the executors in trust, and that the *remainder in fee,* after the expiration of their life-estate, was devised and belonged to such persons as should at their respective deaths be and answer the description of *their heirs at law.* The Vice-Chancellor also made a like decree as to the *personal estate.* The complainant and several of the defendants appealed from this decree to the Chancellor, who, in 1837, *affirmed* the same : see the case and the opinion of the Chancellor in 6 *Paige,* 513, *et sequitur.* From the decree of the Chancellor, Mr. Tallman, the husband of one of the daughters of the testator, and several of the others, heirs at law of the testator, appealed to this court, where the case was argued by :

*A. Worden and G. Wood* for the appellants.

*S. Stevens* for the respondents.

*Points on the part of the appellants:*

I. The powers of the will are void : 1st. By reason of the uncertainty as to the amount to be conveyed at the periods when the divisions are to be made. 2d. Because the powers of the will by possibility *may not be executed* within the period allowed by law for executory estates. 3d. The testator had in view two distinct classes of persons, who he intended should share in the division of his estate ; but the will affords no criterion whereby the rights of one class can be determined against the other ; it is therefore, as to the disposition of the residuary estate, void. *Com. Dig. · Grant, C.* 14. *Powell on Devises,* 211. *Viner's Abr. Vol.* 21. *Uncertainty. Sheppard's Touchstone,* 415, 433. 10. *Modern,* 103. 2 *Jac. and Walker,* 277. 7 *Vesey,* 128. 6 *Vesey,* 404. 9 *Vesey,* 535. 4th. The future estates to arise under the powers of the will are

1841.

Tallman
v.
Wood.

void, not being limited to arise upon any event certain to happen within the period allowed by law for future executory estates ;—not being so limited, it is immaterial how the event turns out. 11 *Wendell,* 279. 5th. There being no gift but in the direction to convey, nothing more than a contingent executory interest vested in the appointees or objects of the power, until the periods of division arrive. *Batsford* v. *Kebel,* 3 *Ves. Jun.* 363. *Wadley* v. *North,* 3 *Vesey,* 367. *Leake* v. *Robinson,* 2 *Merivale* 385. *Vawdrey* v. *Geddes,* 1 *Russel and Mylne,* 203. 6th. The future estates, to take effect through the operation of the powers created by the will, depend in point of time, entirely upon the payment of debts, and the performance of other acts to be done by the trustees, which may not be accomplished within the period allowed for executory estates. *Bagshaw* v. *Spencer,* 1 *Ves. Sen.* 141. 2 *Fearne by Powell,* 4th *London Ed.* 296. 7th. It was uncertain at the testator's death, whether the powers of the will would be executed during the lives of his executors, or the lives of his children, and their issue living at his death, or within any moderate number of years allowed for executory estates. The powers are therefore, void. *Rontledge* v. *Dorril,* 2 *Vesey Jr.* 358. *Hockley* v. *Mawley,* 1 *Vesey Jr.* 150.

II. As to estates to arise under the deeds to be executed by the trustees : 1st. The Revised Statutes having abolished the rule in Shelley's case, and allowed the heirs of a tenant for life to take as purchasers, (1 *R. S.* 719 : §28, 2*d. Ed.*) the Chancellor has supposed that such estates might be created under the powers of the will, although he admits that they could not be created by the will itself. This the Statute expressly prohibits. (1 *R. S.* 741, §11.) 2d. No estate can be created by an instrument in execution of a power which could not be created under the instrument by which the power was granted. 1 *R. S.* 2*d. Ed.* 730, § 129. *Metham* v. *the Duke of Devon,* 1 *P. Will.* 529. *Cook* v. *Duckinfield,* 2 *Atkyn's Rep.* 568. *Vena-*

*bles* v. *Morris*, 7 *Term Rep.* 343. 2 *Vesey Sen.* 612. 2 *Fearne by Powell*, 347. *Sugden on Powers*, 1*st. Am. Ed.* 435, 436. 3d. Every grantee, under a power, takes in judgment of law under the instrument creating the power, and not under the deed executed pursuant to the power. (Cases last cited.) 4th. Whenever an estate is limited to one for life, with a remainder to the heirs of the tenant for life, the remainder to the heirs unites with the freehold of the ancestor, and vests in him a perfect and entire estate in fee simple. This is the rule of law known as the rule in *Shelley's case*, 1 *Rep.* 104. *Kent's Com.* 2*d ed.* 4*th Vol.* 214. 5th. The rule cannot be defeated by the intention of the testator, and the clearer that intention is expressed, to limit an estate to the ancestor for life and after his death to give the remainder in fee to his heirs, the more certain is the application of the rule. 18 *Viner's Ab.* 392. *Reeve's History of the English Law*, 3*d. Vol. page* 8, *and cases cited from the Year Books.* 1 *Fearne's Cont. Rem.* 308. 4 *Cruise's Dig.* 1*st. Am. Ed.* 403, § 77, *Jones* v. *Morgan.* 1 *Bro. C. C.* 219. *Sir William Blackstone's definition of the rule, in Perrin* v. *Blake. Hargrave's Law Tracts*, 1*st. Vol.* 509. *Roe* v. *Bedford*, 4 *Maule and Selwyn*, 362. *Thong* v. *Bedford*, 1 *Bro. C. C.* 313. *Jesson* v. *Wright*, 2*d. Bligh's Rep.* 1. 4 *Kent's Com.* 2*d. Ed.* 226, 227. 6th. The word *heir* may be a word of description, designating and pointing out the persons intended to take in remainder, and may be used to describe sons or children ; in such cases the sons or children take as purchasers to the exclusion of all other heirs. The sons or children are substituted in the place of heirs. *Tanner* v. *Livingston*, 12 *Wen.* 83. *Archer's Case* 1 *Rep.* 66. *Lowe* v. *Davis*, 2 *Ld. Raym.* 1561. *Goodtitle* v. *Herring*, 1 *East* 264. *Jones* v. *Morgan*, 1 *Bro. C. C.* 219. *Jeremy's Equity* 58. *Smith* v. *Clay*, *Ambler*, 645, *containing the limitations directed in Papillon* v. *Voice. Hayes Lim. of Estates*, 94. 7th. In all the cases cited by the Chancellor,

1841.

Tallman
*v.*
Wood.

1841.

Tallman
v.
Wood.

as establishing a distinction between trusts executed and executory, the directions of the will were regarded in the nature of a set of instructions, imperfect in themselves, yet affording evidence of intention as to the nature and quality of the estates to be conveyed; which intention was to be observed in the formation or execution of the deed of settlement.   Thus rendering *the formation of the deed executory,* and a part of the trust being to form or model a conveyance according to the intent, the trust has been for this reason called executory.   1 *Jac. and Walker* 550.   12 *Ves.* 230, 231.   16 *Ves.* 511.   *Ambler* 378, 671.   1 *Eden* 368, 671.   2 *Eden* 367.   *Jeremy's Equity* 58.   4 *Kent's Com.* 2d ed. 220. *Hayes Lim. of Estates*, 22.   8th. The trusts of this will are not executory *as to the formation of the conveyance :* The testator has been his own convcyancer, and framed the limitations to be inserted in the deeds to his children. Those limitations are as perfect as legal skill can make them, and neither the executors nor a court of equity have power to change or alter them.   *Legatt* v. *Sewell*, 2 *Vernon* 531.   S. C. 1 *P. Wms.* 87.   *Sweetapple* v. *Binden*, 2 *Vernon* 536.   *Seale* v. *Seale*, 1 *P. Wms.* 290. *Austin* v. *Taylor*, 1 *Eden* 368.   *Ambler* 378.   *Meure* v. *Meure*, 2 *Atkyn*, 266.   1 *Atkyn* 609.   2 *Vesey Sen.* 954.   *Stanley* v. *Stanley*, 16 *Vesey* 510.   *Britton* v. *Twining*, 2 *Meriv.* 131.   4 *Kent's Com.* 2d. Ed. 219, 220. 1 *Preston* 388, 389.   1 *Fearne by Powell*, 288, 289.   9th. The rule of construction in marriage articles and executory trusts under wills, is, in one sense, the same ; depending entirely upon intention.   If in a marriage article, an estate is to be limited to the husband for life, and then to the heirs of his body, a strict settlement is decreed upon the presumed intent to provide for the issue of the marriage ; but in executory trusts under wills, no such evidence of intent is afforded.   1 *Jac. and Walker*, 554.   *Blackburn* v. *Staple*, 2 *Vesey and Beame* 368.   *Honor* v. *Honor*, 1 *P. Wms.* 123.,  *Trevor* v. *Trevor*, 1 *P. Wms.* 622, 623.

*West* v. *Erisey*, 2 *P. Wms.* 349, *and Mr. Coxe's note.* *Seale* v. *Seale*, 1 *P. Wms.* 290. 10th. If the intention to give an estate to the children for life, with remainder to their heirs, is manifest, the rule operates on such intention, and a court of equity cannot prevent its application, it has never assumed to do so, even in cases of executory trusts under wills. (See cases cited to the 5th point.) 11th. The superadded words of limitation annexed to the words " right heirs," cannot operate to take the case out of the rule. *Denn* v. *Puckey*, 5 *Term Rep.* 299, 305, 306. 1 *Atkyn*, 413. *King* v. *Burchel*, 1 *Eden*, 424. *Ambler* 379. *Roe* v. *Grew*, 2 *Wilson*, 322. *Franklin* v. *Lay*, 2 *Bligh*, 59. *Frank* v. *Stoven*, 3 *East*, 548. *Goodtitle* v. *Pullyn*, 2 *Ld. Raymond*, 1437. *Shelley's Case*, 1 *Rep.* 93. 12th. If the intent is to carry an estate in fee to the heirs of the testator's children, and to create an estate for life in those children, both intentions cannot be carried into effect. The particular intent that the children shall take life estates, must give way to the more enlarged and general intent to carry the estate to the heirs, which can only be effected by giving the children an estate in fee. *4th. Kent's Com.* 2*d. Ed.* 228. *Doe* v. *Smith*, 7 *Term. Rep.* 531. 2 *Bligh Rep.* 51.

III. As to the personal estate : 1st. The deeds embrace the real and personal estate, and the limitations directed carry the absolute interest, in the personal, to the children. Admitting it to have been the intention of the testator, to give his children an estate for life in the personal, with a remainder to their heirs, such intention was contrary to law, and the children take absolutely. *Personal estate* cannot be made descendible to heirs. *Bagshaw* v. *Spencer*, 1 *Ves. Sen.* 146. *Doe* v. *Laming*, 2 *Burr*, 1108. *Britton* v. *Twining*, 3 *Merivale*, 183. 3 *Vesey*, 324. *Chatham* v. *Tothill*, 6 *Bro. Parl. Ca.* 450. *Horne* v. *Lyeth*, 4 *Harr. and John's Rep.* 431. 4 *Kent's Com.* 2*d. Ed.* 229. *Davis* v. *Gibbs*, 3 *P. Wms.* 27. 2d. Where personal estate is given or conveyed with

*1841.*

Tallman
*v.*
Wood.

**1841.**

Tallman
*v.*
Wood.

such limitations as would, if applied to real estate, create an estate of inheritance, in fee or in tail, the absolute interest vests in the first taker. It is therefore settled law that where personal estate is devised to the ancestor for life, and then to his heirs, general or special, the ancestor takes the whole absolutely, and the remainders are void. The rule is the same where the estate is to arise under a deed executed pursuant to a power. *Britton* v. *Twining*, 3 *Merivale*, 176. *Webb* v. *Webb*, 1 *P. Wms.* 142. *Seale* v. *Seale*, 1 *P. Wms.* 290. *Butterfield* v. *Butterfield,* 1 *Ves. Sen.* 134, 1 *Term Rep.* 596. *Elton* v. *Eason*, 19 *Ves.* 78. *Davis* v. *Gibbs*, 3 *P. Wms.* 32. *Kent's Com.* 2*d. Ed.* 229, 230. 4 *Harr. and John. Rep.* 431. *Knight* v. *Ellis*, 2 *Bro. C. C.* 578. 1 *Meriv.* 281. 1 *Ball and Beattie*, 1. 2 *Vern.* 325. 3d. If the Revised Statutes are to operate on this will for one purpose, they should operate for all purposes ; and testing it by the rules of the statute, the powers it contains are void, and the estates to be raised under them cannot be created. *Hone's Ex.* v. *Van Schaick*, 20 *Wend.* 564. *Coster* v. *Lorillard*, 14 *Wend.* 265. *Hawley* v. *James*, 16 *Wend.* 61.

*Points on the part of the respondents :*

I. The trust estate, having actually vested in the executors, by the death of the testator prior to 1830, is free from all statutory restrictions or objections, and is valid. 1 *R. S.* 727, §48, (1*st edit.*)

II. The legal estate being vested in the trustees and their heirs in fee, will enable them, in making the conveyances directed by the will, to carry into effect the intention of the testator, without regard to the strict legal import of the words used, even though the estate or interest directed to be conveyed, could not take effect as a remainder or executory devise, if made directly to the persons who are to take by conveyances from the trustees. 1 *Preston on Estates*, 187–8, 241.

1841.

Tallman
*v.*
Wood.

III. The direction to the trustees to convey a life estate to the testator's children, and the remainder in fee to the right heirs of such children, is not within the rule in Shelley's case : 1st. Such direction is not of itself a conveyance of the property, and vests no legal title either in the children of the testator or the persons who will be their right heirs, but is a direction and authority to the executors *to convey a life estate to the testator's children, and the remainder in fee to the right heirs of such children,* which direction and power must be so executed as to carry into effect the intention of the testator. 1 *Preston on Estates,* 187–8. *Leonard* v. *the Earl of Sussex,* 2 *Vern.* 526. 2d. The trust created by this will in relation to the final distribution of the testators estate, is an executory trust, which has always formed an exception to the rule in Shelley's case. 1 *Preston on Estates,* 187, 405. 3d. It was the intention of the testator, that his children should take a life estate *only,* and that the remainder in fee should go to such persons as would be their heirs at law, and that they should take as purchasers, and not by descent; and if it were necessary to carry such intention into effect, a court of equity would direct a clause to be inserted in the conveyances to be executed by the executors, limiting the fee to trustees during the life estate, to preserve the remainders. 1 *Preston on Estates,* 187–8. *Fearne on Contingent Remainders,* 110, 3d *American from the* 8th *London edit.* 1 *Bro. P. C.* 31, (*Rowlins ed.*) 4th. A conveyance executed in the *precise words* of the direction to the trustees, at the time when the trustees are by will to execute such conveyances, would, by the laws of this state which were in force at and since that time, give but a life estate to the children of the testator, and would give a remainder in fee to the right heirs of such children as purchasers. 1 *R. S.* 725, §28, (*1st ed.*) 5th. It is not claimed that any vested rights of the children of the testator can be affected by the abrogation of the rule in Shelley's case, but it is insisted that all that they can claim is, that the trustees shall execute the trust, either *ac-*

*cording to the manifest intention of the testator,* or *in the words used by him in his directions for its execution;* and in either case, the children of the testator would only have a life estate. 4 *Vesey,* 399.   1 *Preston on Estates* 241–2.

After advisement, the following opinion was delivered :

*By the* CHIEF JUSTICE.   The bill was filed, in this case, for the purpose, among other things, of settling the construction of a particular devise in the will of Walter Wood, which took effect by the death of the testator before the abrogation by our Revised Statutes of the rule in *Shelley's case.*   This rule of construction, it is insisted, is applicable to the clause in question, and vests in the first takers the fee of the real estate devised, and an absolute interest in the personalty.   On the other hand, it is contended that the rule is inapplicable, upon a settled course of decision founded upon the particular phraseology of the clause and character of the devise, it being an executory trust; that we are bound to look at the intent and meaning of the testator, as derived from the scope and language of the instrument, the effect of which is, to limit the estate to the first takers *for life,* with *remainder* over in fee to their children.

The rule in *Shelley's case,* to state it in a simple form, as applicable to the one under review, if at all, is as follows : that where land is given by deed, or will, to a person for life, and after his decease, remainder to his heirs, the word *heirs* is to be construed as a word of *limitation* merely, and vests the fee of the estate in the first taker.   Upon this rule, the children of the testator claim an absolute estate in the property devised.

But co-eval with the rule, it has been held, that where there are any superadded words in the deed or devise,— words of explanation, which plainly show that the grantor or devisor did not mean to use the term *heirs* in a technical sense, but merely as a description of persons to whom he intends the estate shall go after the death of the first taker,

the court will effectuate such intent, and restrain the grant or devise to an estate for life. (12 *Wendell*, 34.) The *heirs* then are regarded as *purchasers*, constituting a new stock with reference to whom the future succession shall be regulated.

1841.

Tallman
*v.*
Wood.

Another well settled modification of the rule exists in respect to the execution of *executory trusts.*—There the court, in decreeing the execution, departs from what would be the legal operation of the words limiting the trust, when applied to legal estates, and consults the intention of the testator, as plainly manifested by the language of the will. The case of *Papillon* v. *Voice*, 2 *P. Wms.* 471, strongly illustrates this distinction. There, a direct devise of lands to B for life, with remainder over to the heirs of his body, was construed to vest an estate tail in B ; but a devise of money to trustees, in trust, to be laid out in land and settled in the same manner, was directed by the court to be conveyed in strict settlement, so as to take it out of the operation of the rule, observing, that the diversity was between the will's passing a legal estate, and leaving the estate executory, so that the party must come into court in order to have the benefit of the will ; that in the latter case the intention should take place, and not the strict rules of law.

I do not intend to go over the cases. The Chancellor has referred to several in his opinion, and shown by his examination, as well as by reference to the highest elementary authority, that this distinction, upon which he has placed the decision of the case, has been a fixed and a settled rule of construction for some hundred and fifty years, and obviously, cannot be departed from without seriously endangering the titles to real property.

Another reason for not troubling the court with any elaborate examination of the cases, is, that in 1830 the Revised Statutes abrogated the rule in *Shelley's case*, and substituted in its place the exception—the one I suppose applicable here—and although the act does not apply to estates vested previous to the passage of the law, as in

**1841.**

Tallman
*v.*
Wood.

the case before us, the effect is to make the rule itself of comparitively little importance, as a rule of property in this state. The act provides (1 *R. S.* 719, §28,) that where a remainder shall be limited to the heirs, or heirs of the body of the person to whom a life estate is given in the same premises, the persons who shall be the heirs, or heirs of the body of the tenant for life, at the termination of the life estate, shall take as purchasers.

The testator devised, with some exceptions not material to notice, the whole of his real and personal estate to his executors, and after giving some general directions for the management thereof during an interval of six years, he orders, that, as soon as practicable thereafter they shall divide the estate into as many shares as there shall be children then alive, and as shall have died leaving lawful issue, and by some proper deed convey one of the shares to each of his said children, and in like manner to the lawful issue of the child deceased ;—and then adds, that " in each deed or writing executed to any one of my children, shall also be inserted and expressed a clause limiting such grant or interest conveyed to the grantee for life, with remainder over to the right heirs of such grantee, their heirs and assigns forever." The devise here is an *executory trust* in the hands of the executors, to be carried into execution according to the directions given in this clause of the will, and agreeably to the rule of interpretation above stated in such cases, we are to look after the intent of the testator, to be gathered from the language he has used in giving his directions ; and if we are at liberty to do so, it seems to me impossible to entertain a doubt upon the case. No other rational meaning can be given to the special clause to be thus inserted in the conveyance, than that he intended the estate should be limited to his children for their lives only. What confirms this view is, that no such clause is directed to be inserted in the deed to the issue of the deceased child —manifesting a clear distinction in the two cases in the same clause of the will. It is conceded, they take a fee,

and if the testator had intended the children should like-wise take a fee, why give directions for this special limitation to them for life.

There were some objections taken on the argument to the devise to the executors, and the powers with which they are clothed ; and also as to the time within which the estate is to be settled upon the children ; but I have not been able to discover that they are well founded.   The executors took the legal estate, and all the directions and limitations prescribed in the course of the execution of the trust, appear to be unexceptionable and in conformity to law.

On the question being put, *Shall this decree be reversed ?* all the members of the court present at the argument of the cause answered in the *negative.*   Whereupon the decree of the Chancellor was *unanimously* AFFIRMED.