PETITION OF LOUIS L. ANGELL, Guardian of Vashti W. Angell, *et al.*, for an Opinion of the Court.

A., her husband joining in the deed, conveyed her realty to trustees to manage, and after paying the expenses of management to hold for her sole use and benefit, to pay in their discretion to her such portion of the income as they thought proper during her life on her sole receipt, and after her death to convey all said trust estate to her heirs at law.
It appearing to the court that the object of the settlor was to protect herself, not to benefit her heirs:
*Held*, that the settlement was subject to the rule in *Shelley's Case*, and that under it the settlor took an equitable fee simple in the estates conveyed to the trustees.
The Rhode Island cases of voluntary settlements examined and discussed.

CASE STATED under Pub. Stat. R. I. cap. 192, § 23, for an opinion of the court, by the guardian and children of Vashti W. Angell.

*April* 1, 1882. POTTER, J. William P. Angell and Vashti W. Angell were married in A. D. 1848. In October, A. D. 1861, they conveyed by deed certain lands in Rhode Island, with personal property, to Lemuel Angell and George W. Angell in fee, "but in trust, nevertheless, for the uses and purposes following,

that is to say, in trust that they shall enter into the full and immediate possession and seizin of said real and personal estate and property, receive the interest, income, and produce thereof, pay all taxes and assessments thereon, keep the buildings in good order and repair, and, so far as they may deem it expedient, keep the buildings insured against loss by fire, with full power and authority, at their pleasure, to change the investment of any of such personal property, and after retaining to themselves as trustees for their services a reasonable compensation, to hold the residue of said real and personal estate and property to and for the sole use, benefit, and behoof of her the said Vashti W. Angell: they, the said trustees, in the exercise of a sound discretion paying over to her, the said Vashti W. Angell, from time to time for and during the term of her natural life so much and such portion of such rest, residue, and remainder of said real and personal estate and property as they may think proper, taking her separate receipt therefor, which is hereby declared to be a full and valid discharge to said trustees for such payments. And in further trust, upon the decease of her, the said Vashti W. Angell, to transfer, convey all said trust property so held by them as trustees as aforesaid to the heirs at law of her the said Vashti W. Angell, in such proportions according to the statute then in force in the State of Rhode Island relative to the descent of intestate estates. We, the said grantors, reserving the right on the part of the said Vashti W. Angell to use and occupy for the use and benefit of herself and family either of the estates now owned by her and hereby conveyed."

There are two children of the marriage living, William R. Angell and Ellen J. Mann, wife of Henry Mann, other children having died leaving no issue. The husband, William P. Angell, died in 1870, and Lemuel Angell, one of the trustees, died in A. D. 1872 or 1873.

At the March Term of this court, A. D. 1873, George W. Angell and the heirs of the deceased trustee applied for a termination of the trust, and the widow, Vashti W. Angell, joined in the application. July 5, 1873, decrees were entered granting the application, but the children, William R. Angell and Ellen J. Mann, with her husband, were not made parties to either of the

suits in which the application was presented to the court. In accordance with the decrees, the trustee and the heirs of the deceased trustee reconveyed said property to the said Vashti W. by deed dated July 7, 1873.

All the parties, including the children who were not parties to the former suits, join in this petition to settle the construction of the deed of trust of October, A. D. 1881, and to ascertain whether any right in the estates conveyed vested in said children by said deed.

And the guardian of said Vashti W. having by leave of the Court of Probate sold land covered by the trust to one Thomas T. Ray, and Ray having contracted to sell the same to one William F. Corbin, and to give a warranty deed thereof, and Corbin declining to take Ray's title, Ray has filed a bill in equity against Corbin, to compel a specific performance of the contract.

The same question is raised in both these cases, in this petition and in *Ray* v. *Corbin*. If Vashti W. Angell had an equitable fee in the property, then the trustee's deed reconveyed it to her discharged of the trust, and she held the whole estate in fee simple at law. Otherwise, the trustee's deed only conveyed an estate for life to the said Vashti.

It is contended on one side that the rule in *Shelley's Case* does not apply : *first*, because the trust was executory ; *second*, because the estate given to the heirs is a legal estate, whereas the estate for life is an equitable estate.

That there is considerable confusion, and a great deal of real or apparent contradiction in the decisions upon the application of the rule in *Shelley's Case*, and especially as to wills and trust estates, must, we think, be admitted. Smith on Executory Interests, vi., and Mr. Hayes, in his Principles for Expounding Dispositions of Real Estate, &c., has undertaken to classify some of the decisions in a tabular form. Hayes, xxix.

It will be found that the fact that something remains to be done, namely, a conveyance by the trustees, does not necessarily take a case out of the operation of the rule in *Shelley's Case*. A very large portion of these questions have arisen upon the construction of wills, and in regard to them the decisions have settled the law that when a testator, instead of passing the legal estate by his will,

leaves something to be done by trustees, so that the parties are obliged to come to a court of equity to have the benefit of it, then even if the legal operation of the words constituting the trust would convey a fee simple or fee tail to the first taker, if there is any language in the will showing a different intention the court will direct the conveyance to be made so as to carry out the intention, and not the strict rule of law. See the opinion of Nelson, C. J., in *Tallman* v. *Wood,* 26 Wend. 9, 18, and of Walworth, Chanc., in *Wood* v. *Burnham,* 6 Paige, 513, 518. And in substantial agreement with this are the definitions of executory trusts given in Hill on Trustees, *328; Smith on Executory Interests, § 489; Preston on the Rule in *Shelley's Case,* 99, 126. See, also, *Jervoise* v. *The Duke of Northumberland,* 1 J. & W. 539, 549, per Eldon, Ld. Chanc.; *Egerton* v. *Earl Brownlow,* 4 H. L. 1; *Tillinghast & Dailey, Trustees,* v. *Coggeshall & Lippitt, Trustees,* 7 R. I. 383, 390, and cases cited by counsel in *Taylor* v. *Taylor,* 9 R. I. 119, 124, 125, 126.

It will be seen, therefore, that instead of there being a positive rule which excepts an executory trust from the operation of the rule in *Shelley's Case,* the matter stands thus: courts will except from the operation of the strict rule of law those cases of executory trusts in which they can see from the instrument itself that the rule would contravene the intention of the party.

And with this agree all those cases which proceed on the ground of general intention, as is explained in the later decisions. See Hayes' Principles, above cited, 24, 44, 46; Smith on Executory Interests, §§ 429, 439; *Jesson et al.* v. *Wright et als.* 2 Bligh, 1, 56, where Lord Redesdale says: "It is dangerous, where words have a fixed legal effect, to suffer them to be controlled without some clear expression or necessary implication. In this case it is argued that the testator did not mean to use the words 'heirs of the body' in their ordinary legal sense, because there are other inconsistent words; but it only follows that he was ignorant of the effect of the one or of the other. . . . That the general intent should overrule the particular is not the most accurate expression of the principle of decision. The rule is that technical words shall have their legal effect unless, from subsequent inconsistent words, it is very clear that the testator meant otherwise. . . .

Those who decide upon such cases ought not to rely on petty distinctions, which only mislead .parties, but look to the words used in the will." See, also, *Doe on dem. Gallini* v. *Gallini*, 5 B. & Ad. 621, 640.

And when the primary object of a settlement by deed is not to benefit a third person, but to make a settlement beneficial to the settlor, or to be substantially a testamentary disposition, it will in equity be treated as such, and be held revocable as a will is. 2 White & Tudor Lead. Cas. Eq. 4th Amer. ed. 1251 ; *Turner* v. *Scott*, 51 Pa. St. 126 ; *Frederick's Appeal*, 52 Pa. St. 338.

When a person conveys real estate by deed or will to a son, daughter, or other relative, and provides for the first taker and the heirs or issue of such, it will be a question of intention. The first taker and his children may be equally objects of the testator's or donor's bounty. He may be actuated by the design of providing for more than one generation of his family, and where this could be gathered from the instrument, it would settle the intention of the donor and the construction of the instrument.

And the question in such cases has been stated to be : " Is the word *heirs* adjected as an incident to the gift made or reserved to the first taker, or used as the substantive term of an independent disposition." Hayes' Principles, above cited, XXXVII. ; Smith on Executory Interests, § 433.

In the first case, to use the words of the Supreme Court of Pennsylvania in *Yarnall's Appeal*, 70 Pa. St. 335, 342 : " The remainder being limited to his heirs, he necessarily becomes the *stirps* or root of a line of unknown persons not individuated by the will, yet dependent on him as their source. They spring into recognition only at his death, for *Nemo est hæres viventis*. In other words, they come at the bidding of the law and not of the testator, who merely adopts them as the law turns them up in the furrow of descent. He who might have appeared to be the heir at the date of the will, by marriage, birth, or death, may not be heir when the will takes effect. In the very logic of the succession, the life estate therefore incorporates with the inheritance, because of the failure of the testator to designate any other than the legal line of descent." Substitute in this quotation the words settlor and settlement for testator and will, and we may apply it to the case at bar.

Or as Smith, Executory Interests, § 433, says: "If the estate is to go to any and every person who can claim as heir general or special to the ancestor, and every such person is to take simply in that character; then, in order to effectuate this intent and secure the succession to its intended objects, it is necessary to reject, as inconsistent and incompatible, any other intent that the ancestor should take an estate for life only, and that the heirs should take by purchase.

In the second case, if the language showed that the settlor in using the word *heirs*, &c., intended to use it in the sense of an independent disposition of the estate, then we should be obliged to hold that the rule in *Shelley's Case* did not apply.

And the books on the subject all show that marriage settlements have always been considered as a peculiar class of cases.

And the cases where a woman before and in contemplation of marriage or after marriage, her husband joining, has made a settlement of her own property, stand still more by themselves. The laws which give to the husband the legal control of the property of the wife, and make it to a certain extent liable for his debts, have rendered it necessary to provide by a settlement against his possible improvidence or misfortune. The object in such cases is to retain the control in the wife herself generally, with a power of appointment, and in case she does not choose to exercise this power, then to her heirs.

In such cases, to retain the control in the wife is the primary intention: to provide for a future disposition of the property is entirely secondary. If such a settlement were made after the birth of children, and that fact appeared in the instrument, that might perhaps affect the construction as showing the intention. Smith on Executory Interests, § 429.

So far as relates to this point, *i. e.* the trust in question being executory, we see nothing whatever to show any intention to take the case out of the operation of the ordinary rule.

And as to the second point, *i. e.* whether the two estates are of the same nature, we are of the same opinion.

In entire accordance with these views have the principal cases in this State relating to trusts of their own property, created by women married or about to be married, been decided.

In *Eaton* v. *Tillinghast, Trustee, et als.* 4 R. I. 276, Mrs. Ruggles had, before her marriage to Levi C. Eaton, conveyed certain real estate to trustees in fee, to receive the rents and income and to pay them over to her during her life, she reserving a power to direct a sale and reinvestment upon the same trusts, and to dispose by will, as if unmarried, of the estate conveyed. After providing for a contingency which did not happen, *i. e.* her husband's outliving her, she provided that if she should outlive him, then on her death the estate " should descend to and be conveyed over by the trustee to the heirs at law of the said Sarah B. Ruggles, whoever they may be," &c. She had four children living. The court, after a full examination of cases and in a long opinion, held that the case fell within the rule in *Shelley's Case*, and a reconveyance was decreed.

In *Tillinghast & Dailey, Trustees,* v. *Coggeshall & Lippitt, Trustees,* 7 R. I. 383, a trust was created by a married woman, her husband joining. He survived her. By it property was conveyed in trust, with provisions that if she died before him the trustees should convey the property to her appointees by will, and if she left no will, then " to her heirs at law or other persons in fee simple," &c., in such proportions and estate as they would be entitled to by the statutes of descent then in force in Rhode Island. The court, by Ames, C. J., in a very long opinion, held, that although the trust was an executed one, nevertheless both estates were equitable estates, and that by force of the rule in *Shelley's Case* the life estate was enlarged into an equitable fee.

And we have no doubt that these cases were correctly decided. Both estates were conveyed to trustees. The estate of the first taker was unquestionably an equitable estate. On the termination of the first estate the second estate remained in the trustees, and was an equitable estate until they conveyed it to the holders of the legal estate. The direction to convey was entirely superfluous. It was no more than a court of equity would have compelled them to do after the trust ceased to be an active trust, even if the settlor had not so provided.

And the case of *Eaton* v. *Tillinghast, Trustee, et als.,* might have been decided as it was upon an entirely different ground.

It is held that where a married woman, or a person fearful of his own management or misfortunes, makes a trust to secure himself against such future mishaps, and omits to insert a power of revocation in the trust, the court will presume that the omission was by mistake or inadvertence, and will in a proper case allow a revocation, notwithstanding the omission. 2 White & Tudor Lead. Cas. Eq. 4th Amer. ed. 1170, 1250, 1251; *Garnsey* v. *Mundy*, 24 N. J. Eq. 243; 13 Amer. Law Register N. S. 345; *Aylsworth* v. *Whitcomb*, 12 R. I. 298, and cases cited; *Turner* v. *Scott*, 51 Pa. St. 126; *Russell's Appeal*, 75 Pa. St. 269; *Tucker's Appeal*, 75 Pa. St. 354.

To prevent misapprehension we will refer to some other cases which have been decided by this court, to show what were the points really determined by them.

In *Ives, Trustee*, v. *Harris*, 7 R. I. 413, the testator had given property in trust for the use of a married woman, with a power of appointment by will, and in case of no will, then " in trust for the heirs or assigns of the said " married woman. The only question was whether she could alienate. But in *Rogers* v. *Rogers*, 10 R. I. 556, in the matter of the same trust after the death of the husband, it appearing that no one else had any interest in it, the court ordered the legal estate to be conveyed to her free from the trust.

In *Greene* v. *Aborn*, 10 R. I. 10, James R. Greene had conveyed by deed property to a trustee for his own use during life, then one third to his widow Caroline for life, and two thirds to his children : if his children died, his widow still living, then on her decease to Mary Greene, if living, and if not, then to those who would be the heirs at law of said Mary. After the death of James R. Greene in A. D. 1866, and of his child in A. D. 1867, the widow and Mary Greene, with all those who would at that time be the heirs at law of the said Mary, filed in A. D. 1871 a bill in equity praying to have the estate conveyed to the said Mary discharged of the trusts. The court refused to grant the prayer. In this case there was no question as to the rule in *Shelley's Case*. The widow had only a life estate, and whether Mary Greene or some one else would be entitled could not be determined until the widow's death.

In *Thurston* v. *Thurston* et als. 6 R. I. 296, the trust was only for the life of the first taker, and then in fee to the heirs. The two estates were not similar, and there was no controversy as to the rule in *Shelley's Case*.

In *Reed* v. *Power*, 12 R. I. 16, the only question was whether a purchaser should be compelled to take a title from the *cestuis que trustent* without the joinder of the trustee in the conveyance.

In *Brownell* v. *Brownell*, 10 R. I. 509, there was a devise to a daughter for life, and at her death to " her oldest male heir," and if no male heir, then to her surviving heirs. Held to be an estate tail.

We would not be understood to imply that the mere fact of a settlement being voluntary or without valuable consideration will always justify a court of equity in setting it aside or holding it to be revocable. See the cases to the contrary in *Ellison* v. *Ellison*, 6 Ves. Jun. 656, and the notes on that case in 1 White & Tudor Lead. Cas. Eq. *208 *sq.*, Amer. ed. by Hare & Wallace.

The only other question grows out of the fact that the two living children of Vashti W. Angell, who would now be her heirs, were not made parties to the decrees and proceedings of A. D. 1873.

If they took no vested estate by the deed of trust, they need not have been made parties. Still, not having been made parties, they have a right to raise the question whether they had or not any interest. But we are of opinion that they took no vested interest ; and as all parties have signed the present case stated submitting the question to the decision of the court, a decree may be entered according to this opinion.

*Decree accordingly.*

*George J. West & Louis L. Angell*, for petitioners.

NOTE. — The above opinion was the last one written by Mr. Justice POTTER, and did not receive his final revision.