1837.

Wood
v.
Burnham.

---

## WOOD *vs.* BURNHAM and others.

Where the testator, who died previous to the adoption of the revised statutes, devised his estate to his executors as trustees to receive the rents and profits thereof for the use of his children for the term of six years, and then to divide the same among his children or their issue then living and to give conveyances therefor; and directed that in each deed or conveyance to any of the testator's children there should be inserted a clause limiting the grant, or interest to be conveyed, to the grantee for life, with remainder over to the *right heirs* of such grantee, their heirs and assigns forever; *Held*, that the executors or trustees were bound to convey the shares of the several children of the testator in such a manner as to give to the first taker an estate for life only, with remainder to such persons as might be his legal heirs at the time of his death; according to the provisions of the revised statutes abolishing the rule in *Shelly's case*.

The rule in *Shelly's case* is not applicable to the case of an executory trust, which is to be carried into effect by a conveyance from trustees of the legal estate, and where it is apparent from the will or instrument creating the trust that the testator or donor only intended to give a life estate to the first taker, and that the heirs of such first taker should have the remainder in fee as purchasers. And in such a case the court of chancery will direct such a conveyance to be made as will most effectually carry the testator's intention into effect, so far as it can be done consistent with legal rules.

It seems a trustee is not bound to appeal from a decision against the rights claimed by him in favor of his cestui que trust who is not a party to the suit. But where the decision of the court below is in favor of such cestui que trust whose interest is represented by the trustee, if the adverse party appeals from the decree, it is the duty of such trustee to endeavor to sustain the decision of the court below upon the hearing of the appeal.

THIS case came before the chancellor upon the appeal of the complainant, and also upon the appeal of Seneca Wood and two of the other children of Walter Wood deceased, from so much of the decree of the vice chancellor of the seventh circuit as adjudged and declared that the children of the testator who were living at the time appointed for the division of his residuary estate only took estates for life in their respective shares thereof; and that the remainders in fee, upon the termination of such estates for life, would belong to such persons as, at the death of the first takers, respectively answer the description of their heirs at law. The defendant Isaac Wood also gave notice of an appeal from the whole decree of the vice chancellor; but as no appeal bond was filed by him, and he having also neglected to appear upon the hearing to argue his appeal, that appeal was dismissed with costs. The other appeals which were argued and submitted upon written briefs on the part of the appellants and of the guardian ad litem of the infant defendant, both depended upon the construction of the executory clause in that part of the testator's will in which he devised his residuary estate, real as well as personal, to his executors or such of them as should make probate of the will, in fee, upon the trust therein declared. The trust declared by the will, as to this residuary estate, was, among other things, to receive the rents, profits and income thereof for the first six years after the testator's death, and divide the same among his children and the issue of such of them as should have died leaving issue, *per stirpes*, and upon the further trust, at the expiration of the six years, to convert the personal estate, and the real estate which had been sold, into stocks; and thereupon to divide such stocks and the real estate remaining unsold into so many shares as there should be children of the testator then alive and as should have died leaving lawful issue then living. And after having made such division, the executors or trustees were directed to convey by a fit and competent deed or instrument in writing, one share to each of the surviving children and one other share to the lawful issue of each child so deceased leaving issue then living. This executory clause then concluded as

follows: " And in each deed or writing executed to any of my children shall be inserted and expressed a clause limiting such grant or interest conveyed to the grantee for life, *with remainder over to the right heirs of such grantee, their heirs and assigns forever.*"

The testator died previous to the adoption of the provision of the revised statutes by which the rule in *Shelly's case* was abrogated, or abolished, leaving ten children him surviving. The time appointed for the division of the estate, however, did not arrive until after the revised statutes went into operation; so that a deed executed at that time in the form prescribed by the testator in the will would clearly vest a life estate in the child to whom it was given ; and would be a valid limitation of the remainder in fee to the heirs of such child after the termination of the life estate. (1 *R. S.* 725, § 28.) Mrs. Burnham, one of the daughters of the testator, died within the six years, leaving three children, one of whom died without issue before the expiration of the time appointed for the division. All the other children of the testator were living at the time of the commencement of this suit, and are still alive ; and all of them except one were married and had issue.

*A. Worden & F. G. Jewett,* for the appellants.

*P. Bronson,* for the infant respondent.

THE CHANCELLOR. As the defendant Burnham, who made the objection in his answer that the presumptive heirs at law of the surviving children were not made parties, has not appealed from that part of the decree which relates to that subject, and has not appeared to argue the case on this appeal, it is not necessary to examine the question here whether he had a right to insist that they should be made parties, for his benefit and protection against any future litigation with them.

The infant son of Mrs. Burnham, who is one of the presumptive heirs of his uncle J. M. Wood, is the only party who has appeared on these appeals that has any interest adverse to that of the appellants ; and even as to him the case

1837.

Wood
v.
Burnham.

is submitted by his guardian ad litem without any argument in favor of this part of the vice chancellor's decree in which the infant has an apparent interest. In a case of this importance, involving the contingent right of the infant defendant, and the rights of numerous other persons who are not before the court, it is to be regretted that the court is compelled to decide the cause without the benefit of an answer to the able and elaborate arguments which have been presented on the part of the appellants. In justice to the guardian ad litem of the infant defendant, however, it is proper to say, that from the written brief presented by him upon another question, it is evident that he has acted upon the erroneous supposition that the infant had no interest in the question as to the validity of the limitations over to the heirs of his uncles and aunts, without adverting to the fact that by the death of either without leaving issue then living, the children or issue of Mrs. Burnham would constitute a part of such heirs. It was clearly the duty of Burnham, however, as the only one of the acting executors who had not a common interest with the appellants, to have employed counsel at the expense of the estate to sustain, if possible, the decision of the vice chancellor, and thus to protect the rights of the unknown parties who may be the heirs at law of such of the children as are now living. Where the decision of the court below is against the rights of unknown parties whose contingent interests are represented by a trustee, it may not be the duty of such trustee to appeal from the decision in order to protect himself from future responsibility. But where the decision of the court below is in favor of the rights of such unknown parties, it is unquestionably the duty of the trustee to endeavor to sustain such decision in the appellate court. It is no fault of the appellants, however, that they have been obliged to argue their appeals ex parte, and that the court is to decide them without the benefit of an argument on the other side. I shall therefore proceed to dispose of the questions arising on these appeals, according to what I conceive to be the law of the case, from the best lights I have been able to obtain from such an argument and my own examination.

The vested rights of the appellants, whatever they were under the will at the time of the adoption of the revised statutes, could not be divested by the abrogation of the rule in *Shelly's case.* And as the execution of deeds to the children in the terms of the will would, under the existing law, only give to them life estates in their several shares, if this court can legally be satisfied that it was the intention of the testator to give them the fee, or if such is the legal construction of the will, the deeds to be given by the trustees must be so modified in their language as to carry into effect such intent of the testator. In deciding upon the question, therefore, as to what estates in their several shares these appellants are entitled to under the will of their father, I lay out of view the fact that this principle of law, commonly known as the rule in *Shelly's case,* which had been such a fruitful source of litigation both in this country and in England for more than two hundred and fifty years, was finally abrogated in this state before the expiration of the six years, which was the time fixed by the testator for the distribution of his residuary estate among his children or their descendants. For this reason it is not necessary that I should resort to those ample stores of legal learning, the anticipated destruction of which, by the abrogation of this anomalous and perplexing rule, has called forth the sad lament of the learned and venerable commentator on American law, the brilliant rays of whose own setting sun have reflected much of the "gladsome light of jurisprudence" upon his country and upon the world. (*See* 4 *Kent's Comm.* 233, *note a.*)

The technical rule of law, that where a person either by deed or will takes a legal or equitable freehold estate, and in the same deed or will an estate of the same quality is limited as a remainder in fee to the heirs general or the heirs of the body of the grantee or devisee, the word heirs is a word of limitation merely, so as to vest a fee in the first taker, or an estate tail which is turned into a fee simple by the statute, was unquestionably the law of this state previous to the first of January, 1830, when the revised statutes went into operation. (*Brant* v. *Gelston,* 2 *John. Ca.* 384.) And

1837.

Wood
v.
Burnham.

1837.

Wood
v.
Burnham.

from the view which I have taken of another question in this case, it is not necessary for me to inquire whether superadded words showing a manifest intention of the grantor or testator that the general heirs or heirs of the body of the first taker should take as purchasers, in the mere character of heirs, would be sufficient to take a legal estate or a vested equitable estate under an executed trust out of the operation of the rule.

The devise to the executors in this case being an executory and not an executed trust, or, in the language of one of the English chancellors, the testator having directed his executors to make conveyances of the estate to the cestuis que trust instead of being his own conveyancer by vesting either a legal or equitable estate in his children and their heirs directly, it forms an exception to the rule in *Shelly's* case. And this court will direct the conveyances to be made in such a manner as to carry into effect the intention of the testator, notwithstanding the existence of the rule. This distinction between executed and executory trusts was recognized and acted upon in the case of *Leonard* v. *The Earl of Sussex*, as early as 1705, (2 *Vernon*, 526 ;) where the court decreed that the conveyance which the trustees were by the will directed to give, should be made in such a manner as to carry into effect the intention of the testatrix, although the execution of a conveyance in the words of the will would have vested an estate tail in the first takers. The distinction was recognized five years afterwards by the house of lords in the case of Sergeant *Maynard's* will ; in which case the court directed a limitation of a term to trustees to preserve contingent remainders to be inserted in a conveyance under the will to carry into effect the supposed intention of the testator, although no such direction was contained in the will itself. (1 *Bro. P. C.*, *Tom. ed.* 31.) The same distinction with particular reference to the rule in *Shelly's case* was acted upon in 1728 by Lord Chancellor King, in *Papillon* v. *Voice*, (2 *P. Wms. Rep.* 471.) In that case a direct devise of lands to B. for life with remainder to trustees to preserve contingent remainders, and then over to the heirs of the body

of B., was held to create an estate tail by the operation of that rule ; but that a bequest of £10,000 to be laid out in land by the trustees and to be settled in the same manner, should be conveyed in strict settlement ; so as to take it out of the operation of the rule.   And this decision was directly sanctioned by Lord Talbot in the case of *Lord Glenorchy* v. *Bossville,* which came before him a few years afterwards.   (*Cases Temp. Talbot,* 19.)   In 1738, the same question came before Lord Hardwick in the cases of *Roberts* v. *Dixwell, Sandys* v. *Dixwell* and *Pyott* v. *Dixwell,* and was decided in the same way.   In the opinion of the court in these cases, which will be found reported at length in the recent reports of Mr. West, his lordship says : "It is true that where there is a devise of a legal estate to one for life and after his decease to the heirs of his body, the first taker, according to the rule in *Shelly's case* takes an estate tail ; and so undoubtedly it would be in the case of a trust actually executed, for then equity follows the law, and whatever estate the party would have had in case of a devise of the land he is entitled to in the case of a devise of the trust of it.   But where the trusts are merely executory, and something remains to be done to perfect and carry into effect the testator's intention, the court is not confined to the strict rules of common law, but governs itself by the testator's intention, and does that which will best answer and support it." (1 *West's Rep.* 542.)   This, therefore, was the settled law of this court at the time of our separation from the mother country, and was the law of this state at the time of the death of the testator under whom these appellants now claim.   And the current of authority in that country subsequent to the revolution is in accordance therewith.   In the case of *The Countess of Lincoln* v. *The Duke of Newcastle,* (12 *Vesey,* 227,) Lord Eldon denies that there is any difference in the execution of an executory trust created by will and of a covenant in marriage articles.   And he says that such a distinction would shake to their foundations the rules of equity.   But he recognizes the distinction between a direct devise of a legal or equitable estate, as an executed use or trust by the will itself, and a covenant in

the marriage articles where the issue of the marriage is the principal object of the settlement. (*See also Jervoise* v. *The Duke of Northumberland*, 1 *Jack. & Walk. Rep.* 550.) It is this distinction which is referred to in the several cases cited by the counsel for the appellants, in the present case, to show that the decisions which have been made upon marriage articles were not applicable to the case of a trust created by a will. I may also add that the distinction between executed and executory trusts created by will in reference to the application of the rule in *Shelly's cnse*, is recognized by Fearne in his valuable treatise on contingent remainders, and by Chancellor Kent in his commentaries on American law. (*Fearne*, 136. 4 *Kent's Comm. 2d ed.* 218.)

The principle therefore must be considered as settled, that wherever there is an executory trust to be carried into effect by a conveyance from the trustees, if it is apparent from the instrument creating the trust that the testator or donor intended that the first taker should have a life estate only, and that his heirs should take the remainder in fee as purchasers, this court will direct such a conveyance to be made as will most effectually carry into effect such intention, so far as it can be done consistently with legal rules. In the present case, from an examination of the provisions of this will I think there cannot be any doubt that it was the intention of the testator that his children who should be living at the expiration of the six years should take an estate for life only in their respective shares, and that their heirs should take the remainder in fee as purchasers. It is impossible to conceive what other object the testator could have had in giving such a positive direction to his executors to insert a clause in the deed limiting the estate in terms to the children of the testator for their respective lives.

The decision of the vice chancellor was therefore correct in declaring that the appellants and the other children who were living at the expiration of the six years were entitled only to a life estate in their respective shares. The deed should be in the form prescribed by the testator himself, which, according to the existing law, will vest such an estate in the children as the testator intended they should have, and

the contingent remainders under such conveyances will ultimately go to those for whom they were unquestionably intended; that is, the real estate will go to the heirs of the first takers, according to the statute of descents, and the stocks or personal estate to the heirs who are entitled to the same under the statute of distributions.

The decision appealed from must be affirmed, and the proceedings are to be remitted to the vice chancellor.