Wagstaff v. Lowerre.

[KINGS SPECIAL TERM, October 14, 1856. S. B. *Strong*, Justice.]

23b 209
31ap 40

WAGSTAFF and others *vs.* LOWERRE and others.

A testator, by his will, executed in 1824, bequeathed to his wife an annuity of $3000 during her life, to be paid out of the income of his estate. He also gave her certain personal property; which bequests were in lieu of dower. He then gave to each of his children, two sons and three daughters, $1000, to be paid to them, respectively, each year, until the division of his estate. The testator then devised his real estate as follows: one-fifth part thereof to his son David, in fee; one-fifth part to his son Alfred (the plaintiff) in fee; one other fifth part to his two sons and to F. upon trust, that upon the division of his estate they should either suffer his daughter Catharine to take, to her own use, during her life, the rents &c. of the said one-fifth part, or that said trustees should take and receive said rents, &c., and after deducting all costs, taxes, &c., pay over to said Catharine, during life, the net proceeds of said one-fifth part; and that upon her death the trustees should convey the said one-fifth part to her rightful heirs, share and share alike. The testator devised one other fifth part of his real estate to the same trustees, for the benefit of each of his other daughters, Ann and Sarah Louisa, upon the same trust, and with the like provisions. The testator made the same disposition of his personal estate which he had made of his real, viz: one-fifth part to each of his sons, to be paid to him upon the division thereof, and one-fifth to be paid to the same trustees, to be held by them upon the same trusts as were applicable to the real estate, for the benefit of each of his daughters. The testator directed that no division of his real or personal estate should take place until one year after the decease of his wife, and until one year after his youngest child should attain the age of twenty-one years. He also directed his executors and trustees, for the benefit of his estate, to let and rent out his real estate until such division should take place, and to invest his personal estate upon stocks, or security of real estate. The testator also directed that in case all or either of his daughters should marry, his executors should pay to each of them, out of that portion of his personal estate previously given to them in trust, the sum of $10,000; which sum, on a division of his estate, was to be deducted from the share or portion so given for

Wagstaff *v.* Lowerre.

the benefit of said daughter; and that on the payment of said sum of $10,000 the annual payment of $1000 should cease, and in lieu thereof each daughter was to receive $300 each year until the division of the estate. The testator appointed his two sons, and F. executors. Previous to Sept. 5, 1828, David, one of the sons, died, leaving two children, and on that day the testator executed a codicil to his will, whereby he revoked the devises and bequests made to said David. He then gave to his son Alfred the part and share of his estate, real and personal, which had been given to David, with a provision that if Alfred should die without leaving issue, then such part and share should go to, and vest in, the surviving children. The testator died in Sept. 1828. His widow died on the 15th of March, 1854, and according to the terms of the will, the division of the estate was to be made on the 15th of March, 1855. Ann, one of the daughters of the testator, died, after the testator's decease, leaving a husband and children.

*Held,* 1. That under the codicil, Alfred was entitled to all that part of the estate given by the will to David, and which the latter would have taken if he had lived. That he was therefore entitled to the annual advance of $1000, given to David from the death of the testator until the division of the estate; that payment not being an annuity, but a rent-charge, descending to the heirs.

2. That it was the intention of the testator that his estate should remain in mass until the expiration of one year from the death of his wife, and until the youngest child came of age.

3. That the testator contemplated that there would be a surplus of rents and income beyond the payments directed to be made previous to the making of the division; and that it was his intention that any such surplus should be from time to time invested, and form a part of his personal estate, and be divided, finally, as such.

4. That if the intervening rents and income, from the death of the testator down to the time of the division, were in fact undisposed of, they fell into the residue of the real and personal estates respectively.

5. That the trusts respecting the shares of the daughters were legal and valid trusts; that they were not passive, but active; that they were not executed but executory trusts, and that the rule in Shelley's case had no application to them; but that they were saved by § 48 of the article of the revised statutes relative to uses and trusts.

6. That there was therefore no accumulation of the rents and profits to which Ann was entitled, on the division, and hence nothing which her administrator was entitled to receive. But that she was entitled to the income accruing from her share of the estate, real and personal, from the time of the division down to the time of her death.

7. That as to a portion of the real estate of the testator which had been taken by public authority, for public use, during the coverture of the testator's daughter Ann, the proceeds were to be regarded and treated as land, and not as money. But that whether land or personal estate, such proceeds, as to the three-fifths in which the daughters were beneficially interested, went to the

executors or trustees, in trust, and the daughters had only a life interest therein.

8. That the plaintiff was entitled to his commissions, as trustee, upon the real as well as upon the personal estate held by him in trust.

The law is well settled, in this state, that trustees, where nothing is said in the deed or instrument creating the trust, as to their compensation, are entitled to the same commissions as are allowed by law to executors and guardians.

In computing the commissions of a trustee, the amount of property held by him in trust is the proper basis of allowance; without making any distinction between real and personal estate.

THE complaint in this cause was filed for the partition and division of the estate, real and personal, whereof David Wagstaff died seised, and for a settlement of the accounts of the plaintiff as trustee and executor under the will of the said deceased. David Wagstaff, of the city of New York, being possessed of a large real estate, on the 7th of August, 1824, made and published his will in due form to pass real estate, whereby, after directing the payment of his debts, he bequeathed to his wife an annuity of $3000 during her life, to be paid out of the income of his estate, and he also gave to his widow certain personal property, and declared that said bequests were in lieu of dower. The testator then gave to each of his children, two sons and three daughters, an annuity of $1000, to be paid to them respectively, in each and every year, until the division of his estate should take place, as therein directed. He then gave several legacies, to which it is unnecessary to refer. The testator then disposed of all his real estate as follows: one-fifth part thereof, he gave to his son David Wagstaff, jun., his heirs and assigns forever; one-fifth part to his son Alfred Wagstaff, (the plaintiff,) and his heirs and assigns forever; one other fifth part to his two sons, and to Benjamin Ferris, upon trust, that immediately upon the division of his estate as therein provided, they should either suffer his daughter Catharine to take to her own use, during her natural life, the rents, &c. of said one-fifth part; or that said trustees should take and receive said rents, &c., and after deducting all costs, taxes, &c. pay over to said Catharine, during her natural life, the net proceeds of said one-

fifth part of said real estate ; and upon this further trust, that immediately upon the death of said Catharine, the said trustees should convey the said one-fifth part to the rightful heirs of said Catharine, share and share alike. The testator devised one other fifth part of his real estate to the same trustees for the benefit of his daughter Ann, upon the same trust, and with the like provisions. The testator also devised one other fifth part of his real estate to the same trustees for the benefit of his daughter Sarah Louisa, upon the same trusts and with the like provisions. The testator made the same disposition of his personal estate which he had made of his real, that is, one-fifth part thereof to his son David, jun., to be paid to him upon the division thereof; one other fifth part to his son Alfred, to be paid to him at the same time ; one other fifth part to be paid to the same trustees, at the same time, to be held by them upon the same trusts, as applicable to the share of the real estate, for the benefit of his daughter Catharine ; one other fifth part to be paid at the same time, to the same trustees, to be held by them upon the same trusts, as applicable to the share of the real estate, for the benefit of his daughter Ann ; one other fifth part to be paid at the same time, to the same trustees, to be held by them upon the same trusts, as applicable to the share of the real estate for the benefit of his daughter Sarah Louisa.

The testator directed that no division of his real or personal estate should take place, until one year after the decease of his wife, and until one year after his youngest child should attain the age of twenty-one years. He also directed his executors and trustees, for the benefit of his estate, to let and rent out his real estate until such division should take place, and for the like benefit, to invest his personal estate upon stocks or security of real estate. The testator also directed, that in case all or either of his said daughters should get married, his said executors should pay to each of them, upon the happening of that event, out of that portion of his personal estate theretofore given to them in trust, the sum of $10,000 ; and which sum, on a division of his estate, was to be deducted from the share or portion so given for the benefit of said daughter ; and that imme-

diately on the payment of the said sum of $10,000, the yearly sum of $1000, therein before given to the daughter receiving the same, should cease, and in lieu thereof said executors were to pay to each of said daughters respectively, the annual sum of $300, until the division of his said real estate. The testator appointed his two sons, and the said Benjamin Ferris, the executors of his last will and testament.

Previous to Sept. 5, 1828, David Wagstaff, jun., one of the sons of the testator, died, leaving two children, and on that day the testator made and published a codicil to his last will and testament, whereby he revoked and declared null and void the devises and bequests therein made to his son David Wagstaff, jun. He then gave to his son Alfred Wagstaff the part and share of his estate, real and personal, which by the will he had given to his deceased son, with a provision that if his son Alfred should die without leaving issue, then such part or share should go to and vest in his surviving children. The testator died on the 28th of September, 1828, and the will was duly proved on the 24th of November, 1828. On the 15th of March, 1854, Sarah Wagstaff, the widow of the testator, died, and according to the terms of the will, the division of the estate was to be made on the 15th of March, 1855. All the children and grandchildren of the testator were parties to this suit. Ann Craig, daughter of the testator, and wife of Benjamin D. K. Craig, had died, and letters of administration upon her estate had been granted to her said husband. A reference had been had to a referee, who had passed the accounts of the executor and testator, and a motion was now made for the confirmation of that report as a preliminary step to an actual partition of the estate, in accordance with the will of the testator.

On the part of the plaintiff it was objected, that as trustee, he was entitled to commissions on the real as well as the personal estate, the referee only having allowed him commissions on the personal estate, and on the receipts and payments made by him. He contended, that on a transfer of the estate out of his hands, he was entitled to his commissions as trustee, on the value of the whole estate, and not on a part only. On the

part of all the defendants, it was contended that the gift to David of $1000 was personal to him, and did not pass to the plaintiff by the codicil. On behalf of the defendant Craig, it was contended that the devise of one-fifth of the real estate to the plaintiff, vested the same immediately in him in fee, on the death of the testator; that the same result obtained as to the share originally given to David; that no directions were given to the executors to let the real estate until the division, nor any disposition made of the rents, and that they therefore went to the owners in fee, and that it followed that the plaintiff took his share and that of David, in the rents and profits from the testator's death. It was also contended, that the daughters each took their shares in fee, and that the intervention of trustees did not alter the case; that the trust was passive and not active, and therefore the estate vested absolutely in each daughter. That the administrator of Mrs. Craig was entitled to the rents and profits of her share, which should have been paid to her during her life; that the same rules were to apply to the personal estate, and the disposition of the income thereof; that the proceeds of lands taken by the constituted authorities for public use, were to be treated as personalty, and, if disposed of by the will, followed the principles to be applied to the personal estate. That if not disposed of by the will, the statute of distributions applied, and each child was to have one-fifth, and the share of Mrs. Craig was to be paid to her administrator.

*J. F. Mitchell* and *B. D. Silliman*, for the plaintiffs.

*John Anthon*, for the defendant Craig and his children.

*William Lowerre*, for himself and wife.

*J. Coit*, for the infant defendants.

*B. F. Dunning*, for the defendants Schieffelin and wife.

DAVIES, J. A careful examination of this will, and the authorities cited on the argument, has led me to the conclusion

that the report of the referee in this case is correct, and should be confirmed, with a single exception.

It appears to me that there can be no serious difficulty in ascertaining the intent of the testator in reference to the disposition of his estate ; and when that can be gathered, the principle is too familiar to need authority to sustain it, that that intention must govern. At the time the will was made, the testator had a wife and five children, who, he anticipated, would survive him. He first makes provision for the payment to his wife of a sum annually, deemed by him adequate to her support, and he then directs his estate to be divided into five parts or shares ; and he gives, absolutely, one share to each son, and to trustees one share to hold for each daughter. He directs that his estate shall remain undivided until one year after the death of his wife, and until his youngest child should attain the age of twenty-one years. The youngest child having attained that age before the death of his wife, the division was to take place on the 15th of March, 1855, being one year after her death. The testator directed that until such division there should be paid out of the income of his estate the sum of one thousand dollars in each year, to each of his children. On the division, the share of the sons was to vest absolutely in them, and the share of the daughters vested in trustees, during their lives, and the rents, profits and income were to be paid over to them. By the codicil, the part and share of the estate of the testator given to David, was given to his brother Alfred, the plaintiff. I think, that under this section of the codicil, the plaintiff is entitled to all that part of the estate given by the will to David, and which the latter would have taken if he had lived. I do not see why his right to this annual advance of $1000 until the division of the estate, (and which David would certainly have been entitled to if he had lived,) is not just as fixed and certain as is his right to the residue of the share of David. The annual payment is but an advance or anticipation of a portion of the share, it is in fact a part of the share, and a devise of the share necessarily carries with it a disposition of all parts of the share and of its product. It is contended, that

the testator obviously intended to place all his children on an equality, and that this construction would give to the plaintiff an annual payment double that of either the other children. But the answer to this is obvious. True it is, that the testator originally started with the idea of placing each of his children on an exact equality, in the disposition and enjoyment of his estate, except that, when the division took place, the sons were each to take their share absolutely, while the share of each daughter was to be held in trust, and the income only to be paid over to her during her life ; yet we see that, on the death of David, the testator manifested a clear intention to change this equality, by making the share of the surviving son double that of each daughter. He might have thought the provision for the daughters entirely adequate, and that those who survived him, bearing his name, should take all that he intended for any one of his name. It was earnestly urged on the argument, that this payment to David was an annuity, and ceased upon his death, and that, therefore, it was not in existence to pass by the codicil. It should be observed, that this advance or payment is nowhere styled by the testator an annuity ; it is not to be paid during their lives, but a specific sum in each year until the division of the estate. It is a gift of the sum of $1000 for each and every year until the division of the estate, and, in this case, it amounted to the sum of $28,000. The general understanding of the meaning of the word annuity is, that it is an annual payment for the support of the recipient; and that it terminates with his life. That it is dependent for its existence on the life of the annuitant. By this test, the provision of $1000 in each year for David, until the division of the estate, cannot be regarded as an annuity. It, in fact, is not an annuity in a legal sense. "An annuity is a yearly sum of money granted by one party to another in fee for life or years, charging the person of the grantor only." (1 Bouv. Law Dic. 104. Co. Litt. 144 b. 2 Bl. Com. 40. 3 Kent, 460.) An annuity is different from a rent charge, with which it is frequently confounded, in this—a rent charge is a burden imposed upon and issuing out of lands, whereas an annuity is charge-

Wagstaff v. Lowerre.

able only upon the person of the grantor. (*Bac. Abr. Annuity A.* 1 *Bouv. Law Dic.* 104.) This is a rent charge and descends to the heirs. And it is apparent that it was so regarded by the framer of the testator's will. It is therein directed, that, in case any of his said children, either before or after his decease, should die leaving lawful issue him or her surviving, such issue shall have and take the share or proportion his or her parent would have been entitled to if living. It seems thus to be the clear intention of the testator, that whatever was given by the will to the parent should, in the event of the death of the latter, go to the child or children; and it is equally clear, in my opinion, that if no alteration had been made in the will, the children of David would have taken all that was given to him; that is, the $1000 in each year until the division of the estate, and then the one-fifth part of the real and personal estate. I am well satisfied, that the same rights which the children of David would have had under the will, if it had not been changed, passed by the codicil to the plaintiff, and that the report of the referee is correct in allowing him the $1000 as part of David's share, from the death of the testator until the division of the estate.

There can be no question that it was the intention of the testator, that his estate should remain in mass until the expiration of one year from the death of his wife, and until the youngest child came of age. The executors were to rent the real estate and invest the personal, and from the receipts make the payments directed by the will until the division should take place. The testator contemplated, what might naturally take place, that there would be a surplus. His children were to receive only until the division, the annual sum directed by the will. What was to be done with this surplus, if any, until the division? I think this question is answered by the directions of the will. The real and personal estate were to be rented and invested until the division, *for the benefit of the estate;* and this provision, taken in immediate connection with the provision that no division of the estate should take place until the happening of the event upon which it depended, and the pro-

vision as to payments to the children until such division, satisfy my mind that it was the intention of the testator that any such surplus should be from time to time invested, and form part of his personal estate, and be divided finally as such. I have been unable to see that these conclusions conflict with any of the cases cited on the argument. On the contrary, it seems to me that these directions are strictly legal and fully sustained by authority.

If the intervening rents and income, from the death of the testator up to the time of the division, are in truth undisposed of, they fall into the residue of the real and personal estates respectively. (*Duke of Bridgewater* v. *Egerton*, 2 *Ves.* 121. 4 *Kent's Com.* 284. • *Bryan* v. *Knickerbacker*, 1 *Barb. Ch. R.* 409.) I think these cases show that if the directions to invest or accumulate the rents and income of the estate, for the benefit of the estate, are not sufficiently explicit, then the executors were bound, as well in accordance with the will of the testator, as in accordance with well settled legal principles, to retain and invest the annual surplus for the estate, and the same must now be divided as part of the real and personal estate.

The learned counsel for the administrator of Mrs. Craig earnestly contended that the trusts created in reference to the shares of the daughters, were passive and not active trusts; that the title of each daughter in the respective share given to her, vested absolutely her share in her; that the rule in Shelley's case was applicable, and that the first taker took the fee. As authority for this, the counsel cited 1 *Coke*, 104; 4 *Kent*, 214; *Schoonmaker* v. *Sheely*, 3 *Hill*, 165; *Lalor on Real Estate*, 97, 75; 2 *R. S.* 11, § 28. These cases illustrate the application of the rule in Shelley's case, and, if the trust created by this will be a passive one, would be controlling. Chancellor Kent says the rule in Shelley's case is equally applicable to conveyances of the legal estate, whether by will or by deed, though there is more latitude of construction allowed in the case of wills, in furtherance of the testator's intention. (4 *Kent's Com.* 7*th ed.* 226.) To maintain the proposition that the trusts created by this will are passive, and not active, the same coun-

Wagstaff v. Lowerre.

sel relies upon *Frazer* v. *Western*, (1 *Barb. Ch. R.* 238.) There the deed conveyed the premises to the trustees upon a mere naked trust; in the first place for the use and benefit of Mary Collins, and her heirs and assigns forever. It then contained the further trust that the trustee should convey the premises to such person or persons as she should by will or by her certificate in writing during her life, and after the death of her husband, designate, and if no such last will and testament should be made, or certificate given, then to convey the premises to her heirs, after her death. In this case the chancellor says, "The trustee then, even before the revised statutes, held the premises as a mere naked trustee of the legal estate, and with a bare power to convey to her devisee, grantee or heirs, either during her life or afterwards. I think, therefore, that the equitable interests of Mrs. Collins were turned into a legal estate in fee in the premises, by the operation of the forty-seventh section of the article of the revised statutes relative to uses and trusts, (2 *R. S. p.* 13,) especially after the death of the husband. That section provided that every person who by virtue of any grant, assignment or devise, then was or thereafter should be entitled to the actual possession of lands and to the receipt of the rents and profits thereof, in law or in equity, should be deemed to have a legal estate therein of the same quality and duration, and subject to the same conditions, as his beneficial interest. The next section, however, declared that the preceding section should not divest the estate of any trustees in any trust then existing, where the title of such trustees was not merely nominal, but was connected with some power of actual disposition or management, in relation to the lands which were the subject of the trust. The object of this last section, undoubtedly, was to preserve the legal title in the trustees, in trusts which had already been created, whenever and so long as the continuance of such legal title in them was necessary to carry into effect any of the objects of the trusts, and when such objects could not be carried into effect if the whole legal title was immediately vested in the *cestui que* trust." This decision was affirmed in the court of errors. (*See* 3 *Denio*, 611.) This case would be controlling,

provided the provisions of the will now under consideration were analogous. The trustees do not hold merely nominally the title of these *cestuis que trust,* unconnected with any power of disposition or management. On the contrary, they are expressly directed in reference to the real estate, "to take and receive the rents, issues and profits thereof, and after deducting therefrom, from time to time, all and every sum or sums of money which they or any of them shall have paid for the taxes, assessments and repairs of the said premises, to pay the net proceeds of such rents and profits unto his said daughter" for and during her natural life, and on her sole receipts, and upon the death of such daughter, to release and convey the said share to her heirs. The trust created in relation to the personal estate, is to place the share of each daughter out at interest on real securities, or invest the same in the public stocks, and pay the interest, dividend or income thereof to his said daughter during her natural life, and immediately upon her death to transfer and pay over the same to her heirs at law. It is thus most apparent that these trusts are not passive but active; not, in the language of § 48, "merely nominal," but are connected with a power of management. They do not, therefore, fall within the provisions of § 47, and are not, consequently, prohibited by it. But if any doubt remained as to the character of these trusts, I think it must be removed by an examination of the case of *Brewster* v. *Striker,* (2 *Comst.* 19.) The facts in that case are briefly these: John Hopper, deceased, in 1815 made his last will and testament, whereby he devised to his three grandchildren and their heirs forever, all his real estate, the same to be disposed of as follows: The said real estate was not at any time thereafter to be sold or alienated, but his said executors, or the survivor of them, were from time to time to lease or rent the same as they might deem most advantageous to the heirs, and such rents to be annually paid by the executors to the heirs in equal portions, and if either of said heirs chose to occupy any part of said real estate, he or she was to have the preference over any other applicant, paying rent for the same. This case was ably argued by the most eminent counsel, and the opinion of the court was

Wagstaff *v.* Lowerre.

delivered by the late Chief Justice Jones. After fully and carefully considering all the objections urged to the provisions of this will, on page 38, he says: "In my view of them, the powers conferred on the executors were not simply leasing powers, or powers in trust in the legal sense of those terms, *but an active trust*, intended to operate upon the estate, and requiring an interest in the land, and the legal title in the executors to the premises, over which they are to be exercised, in order to enable them to execute the same, and fulfill the duties thereby imposed upon them; that consequently the testator's real estate, when his death occurred, by implication of law vested in the executors, and the grandchildren had no legal title thereto, but the beneficial estate and interest only therein." In the case now under consideration the estate was granted in absolute terms to the executors, and is not left to implication, as in the case of *Brewster* v. *Striker, supra.* The case of *Wood* v. *Burnham*, (6 *Paige*, 513,) is in point. In that case, the testator devised his residuary estate, real as well as personal, to his executors, upon trust, to receive the rents and profits, and divide the same among his children, and at the expiration of six years to divide the estate among the children of the testator, and, if any had died, to their lawful issue then living. And the executors were directed to convey the same by a fit and competent deed. The chancellor says, on page 518, "The devise to the executors in this case being an executory, and not an executed trust, or, in the language of one of the English chancellors, the testator having directed his executors to make conveyances of the estate to the *cestui que trust*, instead of being his own conveyancer, by vesting either a legal or equitable estate in his children and their heirs directly, it forms an exception to the rule in Shelley's case." This last case takes the position that the fact that the executors are to convey the estate, makes the devise executory, and therefore, the rule in Shelley's case does not apply.

It was contended on the argument that this was a passive trust, because, by the terms of the will, the *cestuis que trust* were themselves "to receive and take to their own use and benefit," during their lives, the rents, issues, and profits of the one-

fifth of the real estate, devised in trust for them respectively. But it should be remarked, that this could only be done in the discretion of the trustees or executors, and if they had permitted it, the *cestui que trust*, in such receipt, must be regarded as acting as the agent of the trustees. I am of the opinion that the trusts created by this will are legal and valid trusts ; that the same are not passive, but active ; that they are not executed, but executory trusts, and that the rule in Shelley's case has no application to them ; but that the same are saved by § 48 of the revised statutes, supra. It follows as a deduction from these premises that there was no accumulation of the rents and profits to which Mrs. Craig was entitled on the division, and, therefore, nothing which her administrator was entitled to receive. The income accruing from her share of the estate, real and personal, from the time of the division, March 15, 1855, up to the time of her death, she was entitled to, and if not paid to her or allowed to her administrator by the referee, must now be so allowed and paid to him.

A considerable portion of the real estate of the testator has been taken by public authority for public use, and it is alleged that this has worked a conversion, turning the real into personal estate, and that the same must be disposed of according to the statute of distributions. If such a conversion had taken place, I do not see how it is to aid the administrator of Mrs. Craig. If it be personal estate of the testator, it is equally to be held in trust ; and she was only to be entitled to the income of one-fifth during her life. The case of *Graham* v. *Dickinson*, (3 *Barb. Ch.* 169,) is relied on to sustain the position, that the proceeds of the lands taken are to be regarded as personal estate, and, on the death of the wife, go to her representatives, and not to her heirs at law. The chancellor certainly does hold, in that case, that the real estate had been converted into personal, and that, on the death of the wife, her share reverts to her administrator. The case of *Sweezy* v. *Thayer*, (1 *Duer*, 286,) is relied upon as qualifying the decision in *Graham* v. *Dickinson*. I understand the latter case as holding that when the conversion takes place during coverture or infancy, the sur-

plus or proceeds will not be treated as money, and will not be distributed as such, but the same will be regarded as land, and go to the heir at law. If any conversion took place here, it was during the coverture of Mrs. Craig, and this case is authority for holding that the proceeds are to be regarded and treated as land. In either view of this point, I do not see that it is material to the parties; as, whether land or personal estate, it equally, as to the three-fifths, in which the daughters are beneficially interested, goes to the executors or trustees in trust, and they have only a life interest therein.

The only remaining question to be disposed of is that of the claim of the plaintiff to commissions upon the real estate, of which he has had the care and management for near thirty years. In his hands and under his watchful superintendence, and by his skill and good judgment, it has been preserved and protected, until it has become an estate of great magnitude, and giving to each heir a large fortune. The claim of the executor commends itself as just and reasonable, and if it is sustained by principle and authority, ought to be allowed. The English court of chancery did not and does not allow compensation to trustees, executors, &c., unless the same is given expressly or by implication, by the deed or will creating the trust. (*Lewin on Trusts*, 438.) The same rule obtained in this state until the passage, in 1817, of the act giving commissions to executors and administrators. (*L. of* 1817, *p.* 292.) This act authorized the chancellor, on the settlement of the accounts of guardians, executors and administrators, to make a reasonable allowance to them for their services as such, over and above their expenses, and such rate when settled by him was to be conformed to in all cases. In compliance with this statute, the chancellor, on the 16th of October, 1817, made an order that the compensation to guardians, executors and administrators, should be, for receiving and paying out money, on all sums not exceeding $1000, five per cent; two and a half per cent on all sums exceeding $1000 and not exceeding $5000; and on all sums above $5000, one per cent. (3 *John. Ch.* 630.) The English rule was discussed and adhered to by Chancellor Kent, in *Green* v. *Winter*, (1 *John. Ch.* 37.) The

chancellor there allowed the trustee four dollars a day " for his time and expenses," on the ground of a fair indemnity, but adhered inflexibly to the English rule, not to allow a compensation to trustees for their services. He cites with approval the remark of Lord Hardwicke in *Aycliffe* v. *Murray*, (2 *Atk*. 58,) " that chancery looked upon trusts as honorary, and a burden upon the honor and conscience of the trustee, and *not* undertaken upon mercenary motives, though a fair and open bargain with the *cestui que trust* for compensation would be admissible." The doctrine of this case is reaffirmed in *Manning* v. *Manning*, (1 *John. Ch.* 527.) In the latter case Chancellor Kent enters upon a very elaborate discussion of the principles and reasons applicable to such allowances, and reviews all the authorities relating to the subject. He arrives at the conclusion, both upon principle and authority, that no allowance for compensation could be made. This decision was in September, 1815. After the act of 1817, Chancellor Kent held that a committee of a lunatic came within the equity of that act, and allowed to him commissions according to it; and the rate thus fixed by the chancellor was, a few days after, adopted as the compensation for guardians, executors and administrators. (*In the matter of Roberts, a lunatic,* 3 *John. Ch.* 43.)

The question as to compensation to trustees generally, does not appear to have been judicially passed upon in this state until 1832, when Chancellor Walworth, in *Van Rensselaer* v. *Bayard,* and *Denniston* v. *Bleecker,* (not reported, but referred to by him in *Meacham* v. *Sternes,* 9 *Paige,* 398,) was of the opinion that compensation, similar to that allowed to executors, &c. should in all cases be allowed to trustees. In the latter case, he held that such compensation was proper to be paid to trustees for their services, and such has ever since been regarded as the well settled law of this state. In other states, it is now held that trustees are entitled to such compensation, as within the equity of their statutes giving compensation to executors, or because they do not regard the English rule withholding compensation as just and equitable. (*Granberry* v. *Granberry,* 1 *Wash.* 250. *Miller* v. *Beverley,* 4 *Hen. & Munf.*

416. *Prevost* v. *Gates,* 3 *Wash. C. C. R.* 434. *Kendall* v. *New Eng. Co.,* 13 *Conn. R.* 383. *Ringgold* v. *Ringgold,* 1 *H. & Gill,* 11. *Windner* v. *Diffenderffer,* 2 *Bland,* 199. *Boyd* v. *Hawkins,* 2 *Dev. Ch.* 195. *Cheray* v. *Wendell, Walk. Ch.* 267.) The rate of compensation is not uniform in the different states; it is fixed according to the circumstances of each case, the amount of the trust, and the nature and value of the services. In the case of *Meacham* v. *Stears,* (9 *Paige,* 398,) Chancellor Walworth applied the rule of the statute in cases of executors and administrators. He says: " It may, therefore, be considered the settled rule, so far as the decision of this court can settle it, that *in all cases* of trusts of this description, and all other express trusts of a similar nature, where nothing is said in the deed or instrument creating the trust, on the subject of compensation to the trustee for his personal services in the execution of the trust, and where there is no agreement on the subject for a different allowance, that the trustee, upon the settlement of his accounts, will be allowed the same fixed compensation for his services, by way of commissions, as are allowed by law to executors and guardians, and to be compensated in the same manner." In that case, the chancellor allowed commissions to the assignee, upon funds which, in fact, he had not collected, but with which he was charged; and also commissions upon debts due from the assignors to himself, and which he had applied in satisfaction of a debt due to him; and also, commissions upon the balance found due by him, and which by the decree he was directed to pay over.

It seems to have been supposed by the referee that the trustee in this case is limited to his commissions on that part of the estate which has become personal property, and this, doubtless, has arisen from assuming such to be the intent of the statute, in the case of executors and administrators. The statute alludes to personal estate, simply because that is all executors and administrators have in charge. In reference to them, the statute allows commissions " on all sums of money" that they may receive and pay out. (2 *R. S.* 93.) But commissions on the whole amount of the trust estate in their hands, under their

control, and managed by them, was intended, and has been uniformly allowed, even though a very small part was in money actually received or paid out. If the estate of the deceased consisted of stocks, or bonds and mortgages, it might be and often is the case, that the executor actually receives and pays out only the interest or income; yet he would be entitled to and does receive his commissions upon the whole amount of the estate. The compensation is given to him for his care and management of the estate, and not for the simple act of receiving and paying out. And I am unable to see, why the trustee, in this case, should be restricted to his commissions upon the sums of money he receives and pays out, and the personal property which he transfers. The reasons for his compensation apply, in my judgment, with greater force even, in regard to real estate than personal. The responsibility and difficulty of managing a trust estate, consisting of stocks and bonds and mortgages, are far less than that consisting, like the present, of unproductive real estate, lying in the suburbs of a large and growing city. This property has been subject to the system prevailing here, of local improvements, by opening streets and avenues, regulating and paving streets, constructing sewers, and other like operations. It has always been subject to annual taxation, and constant watchfulness is required to save property thus circumstanced from total loss and confiscation. That attention seems to have been given to this estate by the present trustee, and I can see no justice in requiring him to have rendered these services gratuitously, for a period of near thirty years. If any portion of this estate had been lost through his inattention and negligence, he would have been charged therewith. Can any thing be more equitable than that he should receive a compensation for services faithfully rendered in its preservation? No faithful and competent agent could have been hired to render the services performed by this trustee for the amount allowed on the rate paid to executors, &c. In the matter of *De Peyster*, (4 *Sand. Ch.* 511,) Vice Chancellor Sandford held that "as to houses and lots, the argument is strong that they fall within the equity of

Wagstaff *v.* Lowerre.

the statute, and that there is no well grounded distinction between lands and stocks as to the trustees' compensation." In *Mc Whorter* v. *Benson,* (*Hopk. R.* 42,) Chancellor Sanford says, " The amount of property confided to an executor, administrator or guardian, *and passing through his hands,* is a basis upon which his reward may be easily computed. The custody and care of the estate are his duty, and his services in general bear a just proportion to the amount of the estate. Though the value of his services may not be in exact proportion to the value of the estate, yet in the general course of these affairs, *the amount of the estate* indicates, with sufficient exactness, the extent of his labors, cares and services, and their reasonable value. Thus a plain rule of calculation is afforded *by the amount of the property* held in trust; a rule which is comprehensive as well as simple, and which, in all ordinary cases, is a very just criterion of the reasonable value of the services of the trustee. This rule is recommended by its absolute certainty, its intrinsic propriety, its adoption in other states in which compensation is allowed to these trustees, its analogy to compensation made to other trustees and agents, who have the care of property, and by the justice which it will generally afford to an executor, administrator or guardian." I must, therefore, regard *" the amount of property held in trust,"* as the proper basis of allowance to the trustee, and " that there is no well grounded distinction between lands and stocks, as to the trustees' compensation."

I believe that I have now disposed of all the questions raised on the argument of this cause, and have arrived at such conclusions as much reflection and such examination as other claims to my time have permitted.

A decree will be prepared on the principles here settled and for a partition according to the terms of the will ; the shares of the surviving daughters to be assigned to trustees to hold upon the trusts of the will ; the shares of the plaintiff to be transferred to him, and that belonging to the children of Mrs. Craig to be transferred to such as are adults, and the shares of the infants to be deposited with the United States Trust Company,

until they severally attain their majority ; the income of their respective shares to be paid to them during their minority.

The costs of all the parties to this suit, with a reasonable allowance, will be paid out of the funds of the estate.

[NEW YORK SPECIAL TERM, October 15, 1856. *Davies*, Justice.]