JAMES S. AMORY & another *vs.* FRANCES M. MEREDITH & others.

A general devise of all the testator's estate will operate as an execution of a power over property which he had formerly owned, and of which he had the beneficial use as well as the power of disposal, unless a contrary intention appears in the will.

HOAR, J. The testatrix, Miss Elizabeth Amory, being in feeble health, conveyed all her real and personal estate to trustees, upon the trust to manage the property and pay the income of it to her during her life; to reconvey the whole to her whenever she and the trustees should think it expedient to terminate the trust; or, upon her decease before its termination, to convey it to such persons as she should by her last will designate; or, upon her death intestate, to her heirs at law. She afterward inherited a small amount of real and personal estate which was not included in the trust, and the trust was not terminated during her life. By her last will she gave and devised one half of all the estate, real, personal and mixed, of which she should die seised or possessed, to trustees, for the benefit of the family of a brother; one tenth in trust for a sister and her children; and the residue of her said estate to four brothers and sisters named in the will. This suit is brought by her executors and trustees to obtain the direction of the court in the execution of their

trusts, on account of the conflicting claims of the heirs at law and the devisees under the will. And the question is, whether the real and personal estate embraced in the deed of trust will .pass under the will ?

The answer to this question is to be sought by ascertaining the intent of the testatrix as manifested by the will; and this intention being once ascertained, effect is to be given to it accordingly.

We are therefore to decide whether the language of Miss Amory's will, construed in reference to all the property in which she had a legal or equitable interest at the time it was made, and at the time of her death, shall be held to include in its disposition the property of which she had a power of appointment.

Without reviewing in detail the numerous English cases, it is perhaps sufficient to say that, according to the doctrine of the English courts of chancery, the will would certainly not be a good execution of the power. The cases are summed up and reviewed in *Doe* v. *Roake*, 2 Bing. 497, and in *Blagge* v. *Miles*, 1 Story R. 426. The distinction between " power " and " property " is carefully preserved through all of them ; and the refinements and subtleties to which this distinction leads are great and perplexing. The general rule is thus stated by Chancellor Kent, in his Commentaries : " In the case of wills, it has been repeatedly declared, and is now the settled rule, that in respect to the execution of a power, there must be a reference to the subject of it, or to the power itself; unless it be in a case in which the will would be inoperative without the aid of the power, and the intention to execute the power became clear and manifest." " The intent must be so clear that no other reasonable intent can be imputed to the will ; and if the will does not refer to a power, or the subject of it, and if the words of the will may be satisfied without supposing an intention to execute the power, then, unless the intent to execute the power be clearly expressed, it is no execution of it." 4 Kent Com. (6th ed.) 335. And Mr. Justice Story, in *Blagge* v. *Miles*, gives three classes which " have been held to be sufficient demonstrations of an intended execution of a power : (1.) Where there has been some

reference in the will, or other instrument, to the power; (2.) Or a reference to the property which is the subject on which it is to be executed; (3.) Or where the provision in the will or other instrument, executed by the donee of the power, would otherwise be ineffectual, or a mere nullity; in other words, it would have no operation, except as an execution of the power." He adds that these are not all the cases, and that it was always open to inquire into the intention under all the circumstances; while he agrees that " the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation." And it has uniformly been held that a mere residuary clause gave no sufficient indication of intention to execute a power.

But the inconvenience and injustice to which the English doctrine gave rise have been a constant subject of remark by the judges who applied it. Thus in *Jones* v. *Tucker,* 2 Meriv. 533, a case which perhaps illustrates as well as any how far the rigid application of a rule can go in misconstruction, where a woman had a power to appoint £100 by her will, and bequeathed to the plaintiff £100, having no property of her own to answer the bequest except a few articles of furniture, Sir William Grant said: " In my own private opinion, I think the intention was to give the £100 which the testatrix had a power to dispose of, but I do not conceive that I can judicially declare it to have been executed."

So in *Hughes* v. *Turner,* 3 Myl. & K. 688, Sir John Leach remarked: " The question in this case arises from the distinction which has been adopted and settled in courts of equity between the power of disposing of property, and the technical right of property; a distinction which has been regretted by eminent judges, and which, as Lord Eldon has observed, although professed to be adopted in order to further the intention of the testator, in nine cases out of ten defeats that object." He held the power executed. But after his death, the case was reheard by his successor as master of the rolls, who reversed the judgment with the remark, " I fear that the intention of the testatrix may be defeated by my decision."

Lord St. Leonards, the highest authority on any question relating to this branch of the law, says that, " in reviewing the cases, it is impossible not to be struck with the number of instances where the intention has been defeated by the rule distinguishing power from property." Sugden on Powers, (8th ed.) 338.

It is not surprising that a course of decisions obnoxious to such criticisms should be at length controlled by legislation. By *St.* 7 Will. IV. and 1 Vict. *c.* 26, § 27, it was declared that a general devise of real or personal estate, in wills thereafter made, should operate as an execution of a power of the testator over the same, unless a contrary intention should appear on the will. Upon this English statute Judge Story observes, in a note to *Blagge* v. *Miles :* " The doctrine, therefore, has at last settled down in that country to what would seem to be the dictate of common sense, unaffected by technical niceties." 1 Story R. 458, *note.*

We are aware of no decisions in this commonwealth, binding on us as an authority, which should compel us to adopt a rule of construction likely, in a majority of cases, to defeat the intention it is designed to ascertain and effectuate. Seeking for the intention of the testator, the rule of the English statute appears to us the wiser and safer rule ; certainly when applied to cases like the one now under consideration, where the testatrix is dealing with property which had been her own, and of which she had the beneficial use, as well as the power of disposal.

The point to be determined is simply this : Did Miss Amory mean to dispose of the property held under the deed of trust, by the terms of her will, in devising all the estate of which she should be possessed at her death ? We can have no doubt that she did. It was originally her property by inheritance. She received the income of it during her life. She had the complete power of disposal over it by will ; and it constituted the great bulk of the property over which she had testamentary control. If she died intestate, like the rest of her property, it was to go to her heirs. The trust had been created merely with a view to relieve her, when in feeble health, from the trouble of managing

and investing her estate, and with a provision that the trust should be terminated whenever, in her opinion and that of the trustees, it might be expedient. The rest of her property had been transferred, though not to the legal ownership, yet to the care and custody of the same trustees; had been treated in precisely the same manner with that included in the trust; and we can see no reason to believe that it was regarded by her in any different light.

The decree will therefore direct the trustees to convey the property held by them in accordance with the devises and bequests of the will.

*E. D. Sohier*, for certain of the heirs at law, cited 4 Kent Com. (6th ed.) 334, 335, and cases there cited; 1 Jarman on Wills, (4th Amer. ed.) 628, 630, and cases there cited; 2 Ib. 253; 1 Preston on Estates, 271, 295, 356, 357; Sugden on Powers, (8th Lond. ed.) 301; Ram on Wills, 202, 210–220; Hill on Trustees, 333; *Blagge* v. *Miles*, 1 Story R. 445, and cases there cited; *Richardson* v. *Wheatland*, 7 Met. 172; *Wood* v. *Burnham*, 6 Paige, 513; *Papillon* v. *Voice*, 2 P. W. 477.

*R. Olney*, for a devisee under the will, cited Sugden on Powers, (8th Lond. ed.) 289–361, 452, 453, 472, 473, and cases there cited; *Loring* v. *Eliot*, 16 Gray, ; *Andrews* v. *Brumfield*, 32 Mississippi, 107; *Shelley's case*, 1 Co. 93; *Parker* v. *Converse*, 5 Gray, 339; *Otis* v. *Coffin*, 7 Gray, 511; *Steele* v. *Cooke*, 1 Met. 281.